STATE of Iowa, Appellee,

v.

William E. BROWN, Appellant.

No. 59443.

Supreme Court of Iowa.

May 25, 1977.

Lynda E. Thomsen, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., Raymond W. Sullins, Asst. Atty. Gen., and Eugene J. Kopecky, County Atty., for appellee.

Heard by MOORE, C. J., and LeGRAND, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Defendant was charged with possession of a controlled substance (heroin) with intent to deliver, a violation of § 204.401(1),

The Code, 1975. He was found guilty as an accommodator and sentenced to pay a $1000 fine and serve one year in the county jail. On this appeal he claims trial court erred when it entered an adverse ruling on his pre-trial motion to suppress evidence seized on execution of a search warrant. We find no error and therefore affirm the conviction and judgment.

About 8 p. m. on January 9, 1976, six Cedar Rapids police officers went to an apartment where defendant's birthday party was in progress. Their purpose was to execute a search warrant for controlled substances.

The State's testimony, through the officers, placed the policemen on the landing in front of the apartment. One officer knocked on the door and shouted, "Police." A curtain over a window beside the locked door was pushed back; a black male peered out and then "took off in the direction of the bathroom" (the officers had a floor plan of the apartment). A sound of running and shuffling was heard. After waiting a brief period, variously described as being from two seconds to five seconds, the officers broke down the locked door and entered. They caught defendant in the bedroom "just at the edge of the bathroom." They found approximately ten packets of heroin on the floor near defendant's feet and 38 packets of heroin in his pocket. This is the evidence defendant sought to suppress.

Defendant denied having any heroin in his possession. He testified the door was unlocked. He heard no knock and heard no one shout, "Police." He was four feet from the front door, going to the kitchen to get a drink of birthday scotch. However, two of those in the party placed defendant in the bedroom or bathroom when the police entered.

Other apartment occupants testified another person had peeked out the window and the door was immediately forced. One occupant heard the police yell "something."

I. The requirement an officer must state his authority and purpose before breaking into a home was a part of our common law, dating at least from Se-mayne's Case, 5 Coke 91, 11 E.R.C. 629, 77 Eng.Rep. 194 (1604). It was there held,

"In all cases when the King is party, the sheriff (if the door be not open) may break the party's house, either to arrest him, or to do other execution of the K[ing]'s process, if otherwise he cannot enter. But before he breaks it, *he ought to signify the cause of his coming, and to make request to open doors * * *.*" (emphasis supplied)

This concept was adopted in statutes enacted by Congress and many state legislatures, including Iowa. Our statute is § 751.9, The Code:

"The officer may break open any outer or inner door or window of a house, or any part thereof, or anything therein, to execute the warrant, if, *after notice of his authority and purpose*, he is refused admittance."

Defendant contends a violation of this statutory provision infringes constitutional rights. Several courts have held the announcement of identity and purpose before entering private premises is constitutionally mandated by the Fourth Amendment's prohibition against unreasonable searches and seizures. See *Ker v. California*, 374 U.S. 23, 47, 83 S.Ct. 1623, 1636, 10 L.Ed.2d 726, 746 (1963) (Brennan, J., separate opinion); *United States v. Bustamante-Gamez*, 488 F.2d 4, 9 (9th Cir. 1973); *State v. Valentine*, 264 Or. 54, 57, 504 P.2d 84, 85 (1972); *State v. Gassner*, 6 Or.App. 452, 456–457, 488 P.2d 822, 824 (1971); see also Annot., Private Premises—"Knock-and-Announce," 70 A.L. R.3d 217, 222–223 (1976).

Since the alleged statutory violation in the case at bar has serious constitutional implications, we must "make [our] own evaluation of the totality of the circumstances under which [rulings] on those constitutional rights [were] made." *State v. Cullison*, 227 N.W.2d 121, 126 (Iowa 1975); *State v. Boren*, 224 N.W.2d 14, 15 (Iowa 1974); *State v. Thomas*, 205 N.W.2d 717, 721 (Iowa 1973). In other words, the evidence relevant to a constitutional issue is reviewed *de novo*. *State v. Boren*, supra, 224 N.W.2d at 15.

In determining whether the trial court erred in overruling the motion to suppress, we may consider not only the evidence adduced in the motion to suppress but the later trial testimony. *State v. Donnell*, 239 N.W.2d 575, 577–578 (Iowa 1976).

II. The federal "announcement" statute is found at 18 U.S.C. § 3109:

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

Since the federal provision is almost identical to the Iowa statute, federal cases provide persuasive authority in the interpretation of our rule.

Defendant relies on *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). The opinion discloses federal agents went to defendant's apartment at 3:45 a. m. on a drug-related incident. They knocked on the door and "upon the inquiry from within—'Who's there?'—replied in a low voice, 'Police.'" Defendant opened the door and asked what they wanted. Before the officers could respond, defendant attempted to close the door. The agents forced it open. They did not expressly demand admission or state their purpose. They had no search or arrest warrant. 357 U.S. at 303–304, 78 S.Ct. at 1192–1193, 2 L.Ed.2d at 1335. The *Miller* court held the entry unlawful and consequently evidence seized should have been suppressed.

However, *Miller* noted that while some state decisions justified noncompliance in certain "exigent circumstances," the government had made no claim in the case before it of existence of circumstances excusing compliance. Thus *Miller* may be distinguished from the case before us not only on the facts but on the issues raised by the parties.

Here the State argues police officers are not required to comply with § 751.9 when doing so would "lead to the destruction of the evidence or increase the peril to the officer's safety, where persons on the premises will escape, or where the facts make it evident that the officer's purpose is known to those against whom the search is directed."

Abundant authority exists for the proposition exigent circumstances will excuse compliance with constitutional and statutory announcement requirements.

Mr. Justice Brennan, who authored the majority opinion in *Miller v. United States*, supra, wrote a separate opinion in the later Supreme Court case, *Ker v. California*, supra. In *Ker*, Justice Brennan articulated three situations which would constitute exigent circumstances creating exceptions to compliance to the announcement rule:

"Even if probable cause exists for the arrest of a person within, the Fourth Amendment is violated by an unannounced police intrusion into a private home, with or without an arrest warrant, except (1) where the persons within already know of the officers' authority and purpose, or (2) where the officers are justified in the belief that persons within are in imminent peril of bodily harm, or (3) where those within, made aware of the presence of someone outside (because, for example, there has been a knock at the door), are then engaged in activity which justifies the officers in the belief that an escape or the destruction of evidence is being attempted."—374 U.S. at 47, 83 S.Ct. at 1636, 10 L.Ed.2d at 746.

Parenthetically, it should be observed these criteria closely parallel the exigent circumstances which will justify a search and seizure without warrant. See *State v. Ahern*, 227 N.W.2d 164, 167 (Iowa 1975); *State v. Jackson*, 210 N.W.2d 537, 540 (Iowa 1973).

Five years after *Ker*, Mr. Justice Marshall, writing for eight members of the court in *Sabbath v. United States*, 391 U.S. 585, 591, 88 S.Ct. 1755, 1759, 20 L.Ed.2d 828, 834, n.8 (1968) noted,

"Exceptions to any possible constitutional rule relating to announcement and entry have been recognized, see *Ker v.*

*California,* supra, 374 U.S. at 47, 83 S.Ct. at 1636, 10 L.Ed.2d at 746 (opinion of Brennan, J.), and there is little reason why those limiting exceptions might not also apply to § 3109, since they existed at common law, of which the statute is a codification."

While this footnote observation was not controlling in the *Sabbath* result, it does, in our view, strongly indicate the Supreme Court would apply the "exigent circumstances" exception in an appropriate case.

It is clear the overwhelming majority of other jurisdictions, including the federal circuits, have approved the exigent circumstances exception to the announcement rule. See, e. g., *United States v. Wysong,* 528 F.2d 345 (9th Cir. 1976) (entry by passkey approved where officers who reasonably feared destruction of evidence announced, "Federal Agents, open up," and waited five to ten seconds before entry); *United States v. Mapp,* 476 F.2d 67 (2d Cir. 1973) (police officers announced identity but not purpose, waited two or three minutes and entered the house on hearing rapid footsteps to the rear of the apartment; entry justified where officers could have reasonably believed persons in apartment were destroying evidence); *United States v. Manning,* 448 F.2d 992, 998–999 (2d Cir. 1971), cert. denied, 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (forced entry approved after agent knocked, twice identified himself, and heard running and scuffling; "While running and scuffling after such an announcement may be entirely innocent, narcotics agents are entitled to use their knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic * * *."); *United States v. Singleton,* 439 F.2d 381, 386 (3d Cir. 1971) (Police knocked on door, inhabitant parted curtains and looked out window, commotion and shuffling feet followed. Entry held authorized, "Under these circumstances an announcement of purpose and authority would have been a useless gesture and may have enhanced the possibility of destruction of the contraband."); *People v. Maddox,* 46 Cal.2d 301, 294 P.2d 6 (1956) (Narcotics officers

knocked, heard male voice say "Wait a minute" and the sound of retreating footsteps. California Supreme Court, per Justice Traynor, held officers were justified in kicking down the door.).

It should be noted, however, the majority of jurisdictions hold the mere fact that evidence easily destroyed is sought will not alone provide sufficient basis for noncompliance with the announcement rule. See, *People v. Stephens,* 18 Ill.App.3d 817, 823, 310 N.E.2d 755, 760 (1974); *State v. Daniels,* 294 Minn. 323, 332–335, 200 N.W.2d 403, 408–410 (1972); *Commonwealth v. Cerulla,* 223 Pa.Super. 24, 296 A.2d 858, 859–860 (Pa.Super.1972); *State v. Carufel,* 112 R.I. 664, 314 A.2d 144, 148 (1974).

III. Returning to the case before us, it is clear the narcotics officers did not strictly comply with § 751.9 requirements. Section 751.9 requires (1) announcement of authority, (2) announcement of purpose, and (3) refusal of admittance before a forced entry may be made to serve a warrant.

The first requirement (announcement of authority) was met in this case. A declaration that those who seek entry are police officers complies with the statutory requirement of announcement of authority. *United States v. White,* 168 U.S.App.D.C. 309, 514 F.2d 205, 206 (1975).

On the other hand, it is just as clear the police officers did not announce their purpose. They did not say they wanted to execute a search warrant.

As for the third requirement, the answer is not as clear cut. Obviously, there was no verbal refusal to admit the officers. Pertinent, however, is the observation in *McClure v. United States,* 332 F.2d 19, 22 (9th Cir. 1964), that "[t]he refusal of admittance contemplated by the statute will rarely be affirmative, but will oftentimes be present only by implication." In *McClure* the officers announced their authority and purpose and then heard footsteps which appeared to be "running in the wrong direction." The court found the officers were justified in entering at that point. The *McClure* opinion holds the test is whether "the circumstances were such as would con-

vince a reasonable man that permission to enter had been refused." 332 F.2d at 22; see *United States v. Bustamante-Gamez,* supra, 488 F.2d at 11.

After an independent examination of the circumstances in this case, we are in accord with trial court's findings:

"[T]he Court finds as a fact that a refusal to admit the officers is fairly to be inferred. The Court further finds that those inside the apartment were unable to hear what the officers said but realized what their purpose was. Any failure to orally announce their purpose prior to entry was thus without significance and was brought about entirely by the circumstances of the flight toward the bathroom, which was seen by the officers, and the necessity for immediate action to prevent destruction of evidence."

We hold at the time of entry involved in this case exigent circumstances existed which justified noncompliance with § 751.9, The Code. The search was reasonable and no constitutional violation was committed. Trial court properly overruled defendant's motion to suppress evidence. Therefore, the conviction and judgment entered below are affirmed.

AFFIRMED.